UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JAMES P. PATTERSON,<br><br>        Petitioner,<br><br>  vs.<br><br>CONNIE GIPSON, Warden,<br><br>        Respondent.<br>_____ / | No. C 12-1229 PJH (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY** |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner responded with a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

On November 10, 2008, a jury found petitioner guilty of three counts of robbery and not guilty of possession of ammunition by a felon and found true, allegations that petitioner personally used a weapon in commission of two of the robberies. Clerk's Transcript ("CT") at 236-41. On February 9, 2009, the court sentenced petitioner to twenty years and four months in prison. *Id.* at 247. On September 30, 2010, the California Court of Appeal affirmed the judgment and the California Supreme Court denied review on December 15, 2010. Answer, Exh. 8, 12.

The facts, as described by the California Court of Appeal, are as follows:

    [Petitioner] was convicted of robbing three small businesses in Alameda during a two week crime spree in early 2007.

A. Count One

On January 31, 2007, around 8:20 p.m., Joseph Li was working at the Video Factory in Alameda when [petitioner] entered the store, pointed a knife at him, and demanded "all the money in the register[.]" Li opened the register and gave [petitioner] between $300 and $400. [Petitioner] left the store, got on a bike, and fled.

Li called the police. He described the robber as being a Caucasian or Hispanic man in his mid to late 20's around six feet tall weighing 160 to 170 pounds who was wearing a light gray beanie and who had a dark brown mustache.

The police located a suspect who matched that description and took him to Li to see if he could identify him. Li said the man was not the robber.

A couple of weeks later, Li went to the police station to view a photo line-up. Li identified [petitioner] as the man who had robbed him.

Li later testified at [petitioner's] preliminary hearing. He was not able to identify [petitioner] in the courtroom, but he was 100 percent sure that he had selected the right person in the photo line-up.

Subsequently at trial, Li identified [petitioner] as the man who had robbed him. He said his memory had been refreshed because he had read over his statement again.

B. Count Two

On February 10, 2007, near 9:15 p.m., Ronald Sychangco was working at the Harbor Bay Union 76 gas station in Alameda when [petitioner] entered the store, went behind the counter and said, "Give me all your money." [Petitioner] threatened Sychangco with a knife. Sychangco opened the register and gave [petitioner] about $700. [Petitioner] then demanded any personal money that Sychangco might have. Sychangco gave him $10. [Petitioner] told Sychangco to open the store's vault. As Sychangco moved toward the vault, he ran out of the store suddenly and started yelling that he was being robbed.

Alexander Herrera and a friend were at the gas station that evening. He saw Sychangco run out of the store yelling that he was being robbed, and he saw a man run out behind him. The man ran across the street, got into a early model Jetta or Passat and drove away. Herrera and his friend got into their car and tried to follow the robber, but they lost him. Herrera never got a good look at the robber's face.

Meanwhile, Sychangco called the police. He described the robber as a Hispanic man in his 20's, between 5 feet 9-10 inches tall, with a short black mustache and wearing a beanie.

On February 16, 2007, Sychangco viewed a photo line-up but he was not able to identify anyone. However, Sychangco was able to identify [petitioner] as the man who robbed him at [petitioner's] preliminary hearing and at trial. At trial, Sychangco also testified about a surveillance video of the robbery that was played for the jurors. He identified [petitioner] as the robber who was depicted in the video.

2

C. Count Three

On February 15, 2007, near 9:50 p.m., Angelito Tanjuakio was working at the Harbor Bay Union 76 gas station in Alameda when [petitioner] came in, pointed a black gun at him, and demanded money. Tanjuaiko took about $700 from the register and gave it to [petitioner] who fled.

Tanjuakio called the police. He described the robber as a Mexican or Caucasian, between 5 feet 7-8 inches tall, medium build with a mustache.

Tanjuakio was able to identify [petitioner] as the man who robbed him in a photo line-up, at [petitioner's] preliminary hearing, and at trial. At trial, Tanjuakio also testified about a video of the robbery that was captured by a surveillance camera. He identified [petitioner] as the robber who was depicted in the video.

D. Uncharged Crime and Investigation

On February 15, 2007, near 10:00 p.m., (i.e., about 10 minutes after the crime charged in count three) Bemnet Haile was working at the Arco AM/PM gas station on Park Street in Alameda when a man walked in, pointed a black gun at him, and said, "Money money." Haile gave the man about $1,500. The man fled. Haile called the police.

The following day, Sergeant Joseph McNiff of the Alameda Police Department learned that two gas stations had been robbed the night before and that there was video surveillance from both. McNiff watched both videos and determined that [petitioner] was the robber in each. McNiff recognized [petitioner] because he had many encounters with him during the course of his work.

Later that day, Sergeant McNiff asked Sergeant Hosh Durani of the Alameda Police Department to watch the videos. Durani did so and he too identified [petitioner] as the robber in both. Durani had known [petitioner] for years and he recognized him immediately. Durani said there was no doubt that [petitioner] was the person depicted in both videos.

The police set up a surveillance of [petitioner's] house. A green Jetta was parked outside, and the police knew that a similarly colored Jetta had been involved in one of the Union 76 robberies. At some point, [petitioner] peered out his window and appeared to understand that he was being watched. Sergeant Durani called [petitioner] and told him to come out with his hands up. [Petitioner] tried to flee through the backyard, but he was captured and taken into custody.

[Petitioner's] mother allowed the officers to search [petitioner's] bedroom. The officers found a knit beanie cap, a sweatshirt, a razor type cutting tool, and a key that fit the Jetta in the driveway. The cap and sweatshirt matched ones that were depicted in the surveillance videos. The police also found a box of shotgun shells in the bedroom closet.

*People v. Patterson*, 2010 WL 3817725 *1-2 (Cal. App. 1 Dist., 2010).

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on

3

the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *See Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

      A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

      Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

## DISCUSSION

      As grounds for federal habeas relief, petitioner asserts that: (1) his due process rights were violated by admission of evidence of prior bad acts; (2) his due process rights

4

were violated by the trial court's admission of evidence of an uncharged robbery; (3) his due process rights were violated by the trial court's denial of his motion to sever the charges; (4) his right to effective assistance of counsel was violated by counsel's failure to adequately pursue claims one through three; and (5) the cumulative effect of the violations identified above violated due process.[1]

**I.  Prior Bad Acts**

Petitioner asserts that the trial court's admission of evidence of his prior criminal contacts with the police officers who identified him on the surveillance tapes violated due process.

**A.  Factual Background**

**i.  Trial Proceedings**

Trial counsel sought to exclude the evidence that petitioner was on parole when he was arrested and to prevent the police officers from testifying about his prior acts. The prosecutor argued that petitioner's prior contacts were relevant to bolster the police officers' testimony that they were able to identify petitioner from the surveillance videos.[2] The trial court agreed with the prosecutor, finding that petitioner's prior contacts showed that these officers were familiar with petitioner. The following evidence was presented at trial:

> Subsequently at trial, Sergeant McNiff described some of the prior contacts he had with [petitioner]. McNiff said that in 2002 or 2003, he had a 15 minute encounter with [petitioner] in connection with a stolen vehicle incident for which [petitioner] had been arrested. Prior to that, McNiff had seen photos of [petitioner] that indicated he was involved in some activity concerning stolen vehicles. Later in 2003, the police were looking for [petitioner] because he had been involved a "couple of different incidents". McNiff and other officers saw [petitioner] and tried to stop him, but [petitioner] resisted. A fight followed during which the officers used pepper spray on [petitioner] and hit him with a baton. Sergeant Durani testified that he knew [petitioner] because [petitioner] was a parolee and one of his jobs was to monitor parolees who had been released from the California Department of Corrections.

*Patterson*, 2010 WL 3817725 *3.

---

[1] Claims three and five from the original petition have been combined into claim three.

[2] Petitioner's appearance had altered greatly by the time of trial as he had gained considerable weight and had grown a beard. *Patterson*, 2010 WL 3817725 *8.

### ii. California Court of Appeal Opinion

The California Court of Appeal found that the evidence was properly admitted pursuant to California Evidence Code §§ 1101, 352:

> [W]e conclude the trial court here did not err. The prosecutor presented the evidence in question to help prove that [petitioner] was the person depicted in the surveillance videos. The identity of the robber was not only material, it was the primary issue at the trial.
>
> The prior incidents of misconduct tended to prove the material fact at issue. Sergeants McNiff and Durani said they were positive that [petitioner] was the robber who was depicted in the surveillance videos. The prior incidents of misconduct about which [petitioner] complains tended to explain why McNiff and Durani were able to identify [petitioner] in the video recordings so quickly and certainly.
>
> . . .
>
> . . . . While McNiff and Durani both indicated they had known [petitioner] for a significant period of time, the reasons for that knowledge were relevant. As the prosecutor noted when arguing this issue to the court, there is a difference between knowing someone on a causal basis and knowing someone because of multiple and varied prior law enforcement contacts. The trial court reasonably could conclude that the variety and extent of [petitioner's] prior contacts provided heft to the testimony of Sergeants McNiff and Durani and helped explain why they were able to identify [petitioner] so quickly and with such certainty. We conclude the court did not abuse its discretion. [citation omitted]
>
> . . .
>
> Here, [petitioner] contends the trial court abused its discretion because the evidence at issue was not probative. This is so, [petitioner] argues because "The jury was put in the perfect position to decide on its own whether [petitioner], sitting right in front of their eyes, was the robber or robbers depicted in the videos that they were watching with their own eyes." However, this argument fails to take into account a significant fact. [Petitioner] had changed his appearance since the robberies in question. At the time of trial he had put on considerable weight and he had grown a beard. Thus, it would have been more difficult for the jurors to determine whether [petitioner] was the person depicted. Under these circumstances, we conclude the trial court did not abuse its discretion when it declined to exclude the evidence.
>
> [Petitioner] also argues the court abused its discretion because the prejudicial nature of the uncharged misconduct was great. We are not persuaded. Much of the uncharged misconduct was not particularly prejudicial. Vague allegations that [petitioner] had been "arrested" in connection with a stolen vehicle, that he had been "involved" in "some [ ] activity" concerning stolen vehicles, and that he was on parole for some unspecified offense were not likely to have prejudiced the jurors significantly. [Petitioner's] physical altercation with the police is more serious and presented a greater potential for prejudice. But again, the vague nature of that incident lessened its potential prejudicial effect. On this record, we cannot conclude the trial court abused its discretion when it failed to exclude the evidence in question under

Evidence Code section 352. [footnote omitted]

*Patterson*, 2010 WL 3817725 *4-5.

### B. Legal Standard

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)).

Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Henry*, 197 F.3d at 1031; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. *See id.* (citing *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983)). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). But note that only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal*, 926 F.2d at 920.

### C. Discussion

Petitioner argues that admission of this evidence violated due process. To the extent that petitioner argues the state courts incorrectly interpreted state law, any such claim fails. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a

7

federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations omitted)). As noted above there is no Supreme Court authority that the admission of overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Thus, the state court decision denying this claim cannot be an unreasonable application of clearly established Federal law under § 2254(d).

Nor has petitioner demonstrated the admission of this evidence was so arbitrary or prejudicial that it rendered the trial fundamentally unfair. Both the trial and appellate courts properly described the relevance of the evidence as to the police officers' identification and the state courts were well within their discretion to make these determinations, none of which demonstrate a due process violation. Even assuming there was an error, any error was harmless in light of all the evidence against petitioner including various eyewitness identifications, the surveillance video and the physical evidence seized from his house. This claim is denied.

## II.     Uncharged Robbery Evidence

Petitioner contends that his due process rights were violated by the admission of evidence regarding an uncharged robbery.

### A. Factual Background

#### i. Trial Proceedings

The prosecutor filed a motion to be allowed to present evidence of the robbery of the AM/PM gas station that occurred about ten minutes after the nearby robbery charged in count three. The prosecutor argued that due to all the similarities between the uncharged robbery and the charged offenses it was admissible to prove identity, a common plan or scheme and intent. *Patterson*, 2010 WL 3817725 *5. The trial court admitted the evidence to prove a common plan or scheme and intent but not for identity, stating: "there's no real distinct characteristic that distinguishes this robbery from any other robbery. [¶] And more importantly, certainly does not distinctively say that the defendant is the perpetrator. [¶] So,

8

the similar will come in for ... intent and common scheme and plan, but not for identification." *Id.* The trial court also instructed the jurors that the evidence was to be considered only for the limited purpose of determining if it showed similar method or plan to the charged offenses and was not to be considered for bad character of that petitioner had a disposition to commit crimes. *Id.*

### ii. California Court of Appeal Opinion

The California Court of Appeal found that the uncharged offense evidence was not properly admitted pursuant to California Evidence Code § 1101, but the error was harmless:

> Here, while the trial court ruled that evidence of the uncharged robbery was admissible to prove a common plan and intent, it is questionable whether the evidence was properly admitted on those issues. FN3  Our Supreme Court has stated that "in most prosecutions for crimes such as ... robbery, it is beyond dispute that the charged offense was committed by someone; the primary issue to be determined is whether the defendant was the perpetrator of that crime.  Thus, in such circumstances, evidence that the defendant committed uncharged offenses that were sufficiently similar to the charged offense to demonstrate a common design or plan (but not sufficiently distinctive to establish identity) ordinarily would be inadmissible.  Although such evidence is relevant to demonstrate that, assuming the defendant was present at the scene of the crime, the defendant engaged in the conduct alleged to constitute the charged offense, if it is beyond dispute that the alleged crime occurred, such evidence would be merely cumulative and the prejudicial effect of the evidence of uncharged acts would outweigh its probative value."  As for intent, the evidence in this case unequivocally demonstrated that the robber, whoever he was, intended to rob his victims.  A strong argument can be made that evidence of the uncharged robbery was cumulative on an issue that was not truly in dispute.
>
> FN3. We also question the court's conclusion that evidence of the prior crime was inadmissible on the issue of identity.  While the highest degree of similarity is necessary when uncharged misconduct is used to prove identity, here there were many similarities between the robbery charged in count three and the uncharged robbery.  Both occurred at gas stations in Alameda.  Both were committed on the same night and only minutes apart.  In both instances the robber demanded money and threatened the person at the register with a black gun.  Both robbers were dressed similarly.  Both robberies were recorded by a surveillance camera and in both instances, police officers who knew [petitioner] were able to identify him as the robber who was depicted in the recordings.  On this record, the court would have been justified in ruling that the evidence was admissible on the issue of identify.
>
> However, we need not reach those issues because any possible error the court may have committed was harmless.  The evidence in this case was simply overwhelming.  The victim in count one, Joseph Li, identified [petitioner] in a photo line-up and at trial.  He was certain [petitioner] was the

man who robbed him.  The victim in count two, Ronald Sychangco, identified [petitioner] at his preliminary hearing and at trial.  The victim in count three Angelito Tanjuakio identified [petitioner] in a photo line-up, at his preliminary hearing, and at trial.  Surveillance cameras captured the robberies charged in counts two and three.  The victims in those counts, Sychangco and Tanjuakio, both testified that [petitioner] was the robber who was depicted in the recordings.  Sergeant Durani, who had known [petitioner] for many years, testified [petitioner] was the robber who was depicted in the video of the robbery charged in count three. Sergeant McNiff, who also knew [petitioner] because of prior law enforcement contacts, also testified [petitioner] was the robber who was depicted in the video of the robbery charged in count three.  Police searching [petitioner's] room found a cap and sweatshirt that were similar to those depicted in a surveillance video of one of the robberies.  The car in [petitioner's] driveway was similar to one that was used in one of the robberies.  The keys to that car were in [petitioner's] bedroom.  When [petitioner] was confronted by the police, he tried to flee, thus showing consciousness of guilt.  On this record we do not hesitate to conclude it is not reasonably probable [petitioner] would have achieved a more favorable result absent the error alleged.  Any possible error the court may have committed when it admitted evidence of the uncharged burglary was harmless.

Finally on this issue, [petitioner] contends the trial court's admission of the uncharged robbery was so serious as to violate his due process rights.  The erroneous admission of evidence violates due process only if it renders a trial fundamentally unfair.  We cannot reach that conclusion here.  As we have noted, evidence of the uncharged robbery was admissible, albeit on a different issue than that identified by the court.  Evidence of the uncharged robbery was not significantly different from or more prejudicial than the charged crimes.  Furthermore, the evidence that [petitioner] committed the robberies was overwhelming.  On this record, we cannot conclude [petitioner's] trial was fundamentally unfair. [Petitioner's] due process rights were not violated.

*Patterson*, 2010 WL 3817725 *6-7.

**B.  Discussion**

The legal standard for this claim is the same as set forth in claim one and fails for the same reasons.  To the extent it may have been an error under state law to admit the evidence, that will not provide habeas relief.  *See Estelle*, 502 U.S. at 67–68.  Nor can petitioner demonstrate the state court decision was AEDPA unreasonable as there is no established Supreme Court authority to provide habeas relief for the admission of evidence.

Petitioner can only obtain relief if the admission of this evidence was so prejudicial that it rendered the trial fundamentally unfair.  Yet, petitioner has failed to demonstrate that the admission of this evidence was an error that reached such a high threshold.  The jury

10

was instructed that the evidence of this other robbery was only presented for a limited purpose and as noted in the state court opinion, there was overwhelming evidence of petitioner's guilt. As the admission of the evidence did not render the trial fundamentally unfair, this claim is denied.

### III.     Failure to Sever Charges

Petitioner argues the trial court erred by joining the possession of ammunition by a felon charge with the robbery charges.

#### A.  Factual Background

##### i.  Trial Proceedings

Petitioner's trial counsel sought to sever the felon in possession of ammunition charge as trying them together would result in the jury learning that petitioner had a prior felony conviction. The prosecution opposed severance arguing that there was nothing inflammatory about the ammunition charge. The trial court denied the severance motion:

> "The court, under [section] 954, has discretion to sever in the interest of justice and for good cause shown. Here [petitioner] was arrested in count four. There are facts connecting the [petitioner] to the three counts of [robbery]. It's not likely to inflame because the other three charges of robberies, two of them with use of a weapon, it doesn't appear as though from the facts stated that I know, and it's stated by the attorneys, that the weak case is being coupled with the stronger case. The court finds no substantial danger of prejudice."
>
> In light of this ruling, [petitioner] stipulated that he had suffered a prior conviction to prevent the jurors from learning the nature of that prior. Subsequently, the court instructed the jurors that [petitioner] had stipulated that he had a prior conviction, and that they must not "speculate as to the nature of the prior conviction. That is a matter which is irrelevant and should not enter into your deliberations."

*Patterson*, 2010 WL 3817725 *8.

##### ii. California Court of Appeal Opinion

The California Court of Appeal denied the claim:

> We need not address this argument specifically because any possible error the court may have committed was harmless. As we have stated, the evidence against [petitioner] on the robberies, consisting of eyewitness testimony, physical evidence, and video evidence, was extraordinarily strong. Furthermore, in closely analogous circumstances, our Supreme Court has stated that a charge, "alleging that defendant possessed a firearm as an ex-felon is not unusually inflammatory or prejudicial." (*People v. Cunningham*

11

> (2001) 25 Cal.4th 926, 985.) Indeed, the fact that the jurors acquitted [petitioner] on the possession count clearly demonstrates the jurors "considered and weighed the evidence carefully as to each charge separately." (*People v. Moore* (1986) 185 Cal. App. 3d 1005, 1013.) Under these facts, we do not hesitate to conclude that it is not reasonably probable that [petitioner] would have achieved a more favorable result if the possession of ammunition count had been severed. (*People v. Manriquez* (2005) 37 Cal.4th 547, 576.) Any possible error the court may have committed was harmless.

*Patterson*, 2010 WL 3817725 *8.

### B. Legal Standard

A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). A federal court reviewing a state conviction under 28 U.S.C. § 2254 does not concern itself with state law governing severance or joinder in state trials. *Grisby*, 130 F.3d at 370. Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. *Id*. To prevail, therefore, the petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. *Id*. In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000).

### C. Discussion

Petitioner has failed to demonstrate the joinder of the charges had a substantial and injurious effect on the jury's verdict. Petitioner's only argument is that the jury was aware that he had a prior felony and this swayed the jury into finding him guilty of the robberies. Of course, the jury found petitioner not guilty of the felon in possession of ammunition charge, so the jury obviously closely considered each charge against petitioner and this discredits his argument that the jury was influenced by the knowledge of his prior felony. Moreover, no details were provided regarding the prior felony as it was stipulated by petitioner. After reviewing the vast amount of evidence incriminating petitioner for the robberies, it is evident the joinder of the counts did not violate due process and this claim is

denied.

## IV. Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective for failing to adequately object and argue for the exclusion of evidence in claims one and two and for the severance of charges in claim three. He also argues that counsel was ineffective for failing to request a jury instruction involving how the jury should view the evidence that petitioner had prior contacts with the police officers who identified him.[3]

### A. Factual Background

The California Court of Appeal denied this claim:

> Here, [petitioner] contends trial counsel was ineffective in two respects. First, he contends that if we should determine that any of the prior allegations of error he has made were forfeited because trial counsel failed to object, then trial counsel was ineffective because he failed to make those objections. We have not ruled that any of [petitioner's] prior claims were forfeited due to trial counsel's failure to object. There was no ineffective assistance on this ground.
>
> Second, [petitioner] contends trial counsel was ineffective because he failed to ask the trial court to instruct the jurors on how they should view the evidence that he had prior contacts with law enforcement personnel, (i.e., that he was a parolee, that he had [] previously been incarcerated, that he had been arrested for car theft, and that he had a physical altercation with the police). Specifically, [petitioner] contends trial counsel should have asked the court to instruct the jurors that [] evidence was admitted only to explain how Sergeants McNiff and Durani were able to recognize him so readily. FN4
>
>> FN4. [Petitioner] contends counsel should have asked the court to instruct as follows:
>>
>> "[Evidence] has been introduced for the purpose of showing that the defendant committed a crime other than that for which he is on trial.
>>
>> "This evidence, if believed, may not be considered by you to prove that defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose to show ... the officers' ability to identify [petitioner] by sight."

---

[3] This claim was denied by the California Court of Appeal but not presented to the California Supreme Court. While it is unexhausted, the court will deny it on the merits as petitioner does not raise a colorable claim. *See* 28 U.S.C. § 2254(b)(2); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (holding that an unexhausted petition may be denied on the merits when it is perfectly clear that the applicant does not raise even a colorable federal claim).

> We are unpersuaded. The record does not explain why counsel acted as he did, and it is entirely possible defense counsel made the tactical decision not to seek the instruction [petitioner] suggests believing it would only call attention to the evidence [petitioner] has identified. That choice would be reasonable and certainly would not constitute ineffective assistance. (Cf. *People v. Bonilla* (1985) 168 Cal. App. 3d 201, 206.) We conclude [petitioner] has failed to carry his burden of demonstrating that trial counsel was ineffective.

*Patterson*, 2010 WL 3817725 *9.

### B. Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *Cullen*, 131 S. Ct. at 1403. A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See id.* at 1410–11. The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a

narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland' s deferential standard." *Harrington*, 131 S. Ct. at 788.

To demonstrate deficient performance, a petitioner is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.

**C.  Discussion**

As noted in claims one through three above, trial counsel objected to the admission of evidence and joinder claims. Petitioner has not adequately explained how trial counsel's objections were inadequate and insufficient. Even assuming that counsel was ineffective for not adequately objecting, petitioner has failed to show that he was prejudiced. The court has denied the claims above and found none have merit, based in part on the lack of Supreme Court authority and the overwhelming evidence against petitioner. As the claims are meritless, petitioner is unable to demonstrate that counsel was ineffective for failing to adequately object.

Nor was trial counsel ineffective for failing to request a jury instruction regarding how the jury should view the evidence that petitioner had prior contacts with the police officers who identified him. As set forth by the state court, it was reasonable for trial counsel not to draw the jury's attention further to the evidence that the police officers easily identified him on the surveillance videos, if this was in fact trial counsel's reason. Even assuming that counsel erred by not requesting an instruction, petitioner has again failed to demonstrate prejudice or how the jury verdict would have been different with the inclusion of the instruction. Petitioner's conclusory argument with no support that the jury instruction was critical to his defense, is insufficient. There was overwhelming evidence implicating petitioner in the robberies, and this one jury instruction regarding his prior contacts with law enforcement would not have changed the verdict. This claim is denied.

15

## V. Cumulative Error

Petitioner argues that the cumulative effect of the alleged errors raised in this petition was so prejudicial his due process rights were violated.

### A. Legal Standard

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution); *Thomas v. Hubbard*, 273 F.3d 1164, 1179-81 (9th Cir. 2002), overruled on other grounds by *Payton v. Woodford*, 299 F.3d 815, 829 n.11 (9th Cir. 2002) (reversing conviction based on cumulative prejudicial effect of (a) admission of triple hearsay statement providing only evidence that defendant had motive and access to murder weapon; (b) prosecutorial misconduct in disclosing to the jury that defendant had committed prior crime with use of firearm; and (c) truncation of defense cross-examination of police officer, which prevented defense from adducing evidence that someone else may have committed the crime and evidence casting doubt on credibility of main prosecution witness).

Cumulative error is more likely to be found prejudicial when the government's case is weak. *See, e.g.*, *Thomas*, 273 F.3d. at 1180 (noting that the only substantial evidence implicating the defendant was the uncorroborated testimony of a person who had both a motive and an opportunity to commit the crime). However, where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011). Similarly, there can be no cumulative error when there has not been more than one error. *United States v. Solorio*, 669 F.3d 943, 956 (9th Cir. 2012).

### B. Discussion

On direct appeal, the state court denied this claim finding the few errors were not prejudicial even considered cumulatively. *Patterson*, 2010 WL 3817725 *9. This finding

was not contrary to established Supreme Court authority. This court has not found any constitutional errors let alone multiple errors that cumulatively would allow for reversal. *See Hayes*, 632 F.3d at 524. Nor do the state law errors identified by petitioner warrant issuance of the writ as federal habeas relief is not available for state law errors. *See Estelle,* at 67. Therefore, this claim is denied.

## VI. Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds three issues presented by petitioner in his petition meet the above standard and accordingly GRANTS the COA as to only those issues and not the other claims in the petition. *See generally Miller-El*, 537 U.S. at 322.

The issues are:

(1) whether his due process rights were violated by admission of evidence of prior bad acts;

(2) whether his due process rights were violated by the admission of evidence of an uncharged robbery; and

(3) whether his due process rights were violated by the trial court's denial of his motion to sever the charges.

Accordingly, the clerk shall forward the file, including a copy of this order, to the

17

Court of Appeals. See Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A Certificate of Appealability is **GRANTED**. See Rule11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 21, 2013.

          PHYLLIS J. HAMILTON
          United States District Judge

G:\PRO-SE\PJH\HC.12\Patterson1229.hc.wpd